ESTATE OF JAMES O. TOMERLIN, WILLIAM R. TOMERLIN, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Tomerlin v. Commissioner
Docket No. 704-83.
United States Tax Court
T.C. Memo 1986-147; 1986 Tax Ct. Memo LEXIS 460; 51 T.C.M. (CCH) 831; T.C.M. (RIA) 86147; April 15, 1986. *460 In August 1975, decedent was a 50-percent stockholder in a corporation that purchased a life insurance policy on decedent's life. The corporation owned the policy, paid the premiums and named itself and decedent's children as beneficiaries. In October 1975, the corporation and decedent entered into an agreement whereby decedent was given certain rights with respect to the insurance policy. Held, the proceeds of the insurance policy payable to decedent's children are includable in decedent's gross estate pursuant to sec. 2042(2), I.R.C. 1954, because decedent possessed incidents of ownership in the insurance policy at the time of his death. Douglas M. Edwards, for the petitioner. A. Chris Zimmerman, for the respondent. STERRETT
*461 MEMORANDUM OPINION STERRETT, Chief Judge: By notice of deficiency dated October 6, 1982, respondent determined a deficiency of $138,346 in the Federal estate tax of the Estate of James O. Tomerlin. After concessions, the sole issue for our resolution is whether decedent possessed any incidents of ownership in a life insurance policy on decedent's life, thereby warranting the inclusion of the proceeds of said policy in decedent's gross estate pursuant to section 2042(2). [1]
The facts have been fully stipulated pursuant to Rule 122 and are so found. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference and form the basis of the Court's findings of fact. Petitioner herein is the Estate of James O. Tomerlin. James O. Tomerlin (hereinafter referred to as decedent) died on November 10, 1978 at the age of 57. William R. Tomerlin is the executor of decedent's estate, and he resided in Gardnerville, *462 Nevada at the time the petition was filed in the instant case. Decedent's Federal estate tax return was timely filed with the Office of the Internal Revenue Service at Reno, Nevada. At all relevant times, decedent and his brother, William R. Tomerlin, each owned 50 percent of the stock of Cyclo Automotive, Inc., a Nevada corporation (hereinafter referred to as Cyclo). In August 1975, New York Life Insurance Company issued an insurance policy in the face amount of $200,000 on the life of decedent with Cyclo designated as owner. The beneficiaries under the insurance policy were Cyclo and decedent's children. The insurance policy provided that upon decedent's death Cyclo would be entitled to receive an amount equal to the insurance policy premiums it had paid, and that the remaining insurance proceeds, if any, would be paid to decedent's children. Under the terms of the insurance policy, Cyclo, not decedent, was given all of the incidents of ownership. However, pursuant to an agreement entered into between decedent and Cyclo in October of 1975, decedent was given certain rights with respect to the insurance policy. The relevant provisions of the agreement provided as follows: *463 4. [Decedent] * * * shall be entitled, during the existence of this agreement, to specify in writing the beneficiary or beneficiaries which * * * [Cyclo] shall designated to receive any death benefit proceeds payable under said [insurance] policy * * *. * * * [Cyclo] will not change such designation of beneficiary except with the written consent of * * * [decedent]. 5. While this agreement is in force, * * * [Cyclo] agrees that it will not surrender, sell, transfer or otherwise terminate its interest in said policy without the written consent of * * * [decedent]. * * * 6. This agreement shall terminate on the occurrence of any of the following events: (a) Either party may terminate this agreement by giving written notice to the other party, sent by Registered Mail; (b) The mutual consent of both parties; (c) Termination of employment of * * * [decedent] during his lifetime. 7. Upon the termination of this agreement, * * * [decedent] may * * * purchase said [insurance] policy from * * * [Cyclo] by paying to * * * [Cyclo] a purchase price equal to said [insurance] policy's tabular cash value at the date of sale, less any existing indebtedness *464 charged against said [insurance] policy. Upon payment of such amount, * * * [Cyclo] will transfer ownership of said [insurance] policy to * * * [decedent] and * * * [Cyclo] shall have no further rights therein. * * * In his Federal estate tax return, decedent's gross estate did not include the life insurance proceeds of $183,588 payable to decedent's children. In the statutory notice of deficiency, respondent determined that such proceeds are includable in decedent's gross estate pursuant to section 2042(2). Section 2042(2) requires the proceeds of life insurance on a decedent's life to be included in his gross estate if he possessed at the time of his death any incidents of ownership in the policy, exercisable either alone or in conjunction with another person. While the statute does not define the term "incidents of ownership," section 20.2042-1(c)(2), Estate Tax Regs., does elaborate on its meaning and provides in part as follows: the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits *465 of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. * * * [2]
As used in this regulation, the word "power" refers to a legal power to exercise an incident of ownership. See Commissioner v. Estate of Noel,380 U.S. 678, 684 (1965); Estate of Bartlett v. Commissioner,54 T.C. 1590, 1597-1598 (1970). *466 We must determine whether decedent at the time of his death possessed any incidents of ownership in the life insurance policy to cause the inclusion of the policy's proceeds in his gross estate. Petitioner contends that decedent, under the terms of the insurance policy, did not possess any incidents of ownership. Respondent maintains that, by virtue of the agreement entered into between decedent and Cyclo, decedent did possess incidents of ownership at the time of his death within the meaning of section 2042(2). We agree with respondent. We faced this issue in Estate of Thompson v. Commissioner,T.C. Memo. 1981-200. In Estate of Thompson, decedent's wholly owned corporation purchased a life insurance policy on decedent's life in 1973. The corporation owned the policy, paid the premiums and named itself as beneficiary. The policy provided that all rights available under the policy were vested in the owner (the corporation) and were exercisable without the consent of anyone else. In 1975, the corporation and decedent entered into a contract whereby decedent obtained the legal power, in conjunction with the corporation, to change the beneficiary of the proceeds *467 of the policy. Respondent determined that the proceeds of the policy should be included in decedent's gross estate pursuant to section 2042(2). His determination was based on the fact that decedent had been given certain incidents of ownership in the policy by virtue of the agreement entered into between decedent and the corporation. We agreed with respondent. In reaching our result, we did not limit our analysis to the provisions of the insurance policy. Rather, we examined the contract between decedent and the corporation and determined that, by virtue of such contract, decedent at the time of his death possessed incidents of ownership in the insurance policy. [3]
In the instant case, like *468 the situation in Estate of Thompson v. Commissioner,supra, decedent possessed incidents of ownership in the insurance policy by virtue of the contract entered into between decedent and Cyclo. [4] Decedent was given the right to designate the beneficiaries of the insurance policy, the right to veto a change of beneficiaries, the right to veto an assignment of the insurance policy, and the right to cancel and then purchase the insurance policy at its cash value. These rights clearly are incidents of ownership which warrant the inclusion in decedent's gross estate of the policy's proceeds payable to his children. Sec. 20.2042-1(c)(2), Estate Tax Regs. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. See also Nance v. United States,430 F.2d 662, 663 (9th Cir. 1970) (decedent's right to change the beneficiary of the insurance policy, subject to the beneficiary's consent, is an incident of ownership); Commissioner v. Estate of Karagheusian233 F.2d 197, 199-200 (2d Cir. 1956) (decedent, acting in conjunction with his wife and daughter, had the power to determine the ultimate distribution of the proceeds of the insurance policy and this power was an incident of ownership); Schwager v. Commissioner,64 T.C. 781, 789-792↩ (1975) (decedent's negative power, the right to veto a change in the beneficiaries of the insurance policy, was an incident of ownership).
3. See also Estate of Fruehauf v. Commissioner,427 F.2d 80 (6th Cir. 1970), affg. 50 T.C. 915 (1968) (where the fact that decedent possessed incidents of ownership in the life insurance policy was determined from an examination of the provisions of a will); Commissioner v. Estate of Karagheusian,supra↩ (decedent's incidents of ownership in the life insurance policy were created by a collateral contract, which was a trust instrument).
4. Since both parties apparently proceeded on the assumption that the contract was valid and binding upon decedent and Cyclo, we also proceed on this assumption.↩